UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WENDALL HALL and TONNIE NEALY,

    Plaintiffs,

v.                                            Case No.:  2:23-cv-595-SPC-NPM

JON CARNER and SMART COMMUNICATION LLC,

    Defendants.
_____/

## **OPINION AND ORDER**

Before the Court are Defendant Jon Carner's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 27) and Defendant Smart Communications Holdings, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 39). Plaintiff Wendall Hall responded to both motions, (*see* Docs. 32 and 40), but Plaintiff Tonnie Nealy did not.

### **Background**

Hall and Nealy are involuntarily committed residents of the Florida Civil Commitment Center (FCCC). They filed this action to challenge a new mail policy. The Court recounts the factual background as pled in Plaintiffs' Second Amended Complaint, which it must take as true to decide whether the

complaint states a plausible claim.  See *Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

On March 29, 2023, Jon Carner, the FCCC's facility administrator, announced a new mail policy meant to prevent contraband from coming into the FCCC through the mail.  Under the policy, the FCCC forwards all resident mail to Smart Communications.  Smart Communications opens and scans the mail, then destroys the original copies.  This process can take up to five days.  FCCC residents can access digital copies of their mail on tablets provided by the FCCC.  Each FCCC dorm has one tablet for every six residents.  There are no time limits on the use of the tablets, and there is no guarantee a tablet will be available when a resident wants to use it.  The new policy also replaces paper sick call requests, grievances, and communication forms with electronic forms.

Plaintiffs claim the mail policy violates a slew of rights protected by the First and Fourteenth Amendments by depriving them of possession of the physical mail sent to them, hindering their access to the courts, and allowing FCCC and Smart Communications staff to read private and privileged communications.  Plaintiffs also claim the policy prevents them from receiving religious materials and taking remote college courses.  Plaintiffs express concern that using shared tablets to read their mail could spread diseases, and they argue Carner is unqualified to be the FCCC's director.

Plaintiffs claim the mail policy has caused them mental and emotional damages, sleepless nights, migraine headaches, and "post dramatic stress syndrome." (Doc. 16 at 22). They seek $5 million in compensatory and punitive damages and injunctive relief. Both Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Plaintiffs are representing themselves. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Child. & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

## Discussion

### A. State-actor requirement

§ 1983 "seeks to deter *state* actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide related relief." *Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (quotations marks and citation omitted). Private entities may be sued under § 1983, but only in rare circumstances. *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). Smart Communications argues this is not one of those circumstances.

The Eleventh Circuit recognizes three tests to evaluate § 1983's state action requirement: (1) the public function test, (2) the state compulsion test, and (3) the nexus/joint action test. *NBC v. Commc'ns Worker of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988). Plaintiffs argue Smart Communications satisfies the public function test. That test "has been limited strictly, and covers only private actors performing functions 'traditionally the exclusive

4

prerogative of the state.'" *Id.*(quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 454-55 (1974)). Plaintiffs rely in part on *West v. Atkins*, 487 U.S. 42 (1988). There, the Supreme Court held that a private physician who provided medical care to prisoners under a contract with the State of North Carolina acted under color of state law. *West*, 487 U.S. at 54.

According to the Second Amended Complaint, Smart Communications has undertaken the task of delivering mail to individuals who are in custody of the State of Florida. Plaintiffs must rely on FCCC staff—and now Smart Communications—for delivery of incoming mail, including legal mail. They have no alternative option because they are detained under Florida law. The Court finds that Smart Communications acts under color of state law when processing and delivering Plaintiff's mail.

**B. Pleading Sufficiency**

The Court will first address Plaintiffs' challenges to the mail policy itself, then it will address Plaintiffs' claim that sharing the tablets is unhygienic.

1. The mail policy

In *Pesci v. Budz*, the Eleventh Circuit adopted a modified *Turner*[1] standard when evaluating the constitutionality of FCCC policies. 730 F.3d 1291 (11th Cir. 2013). In *Turner*, the Supreme Court sought to balance the

---

[1] *Turner v. Safley*, 482 U.S. 78 (1987).

5

constitutional rights of prison inmates with the recognition that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Turner*, 730 F.3d at 2254. It struck that balance with a four-part inquiry meant to determine whether a prison regulation that impinges inmates' constitutional rights is reasonably related to legitimate penological interests:

> (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns.

*Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) (quoting *Turner*, 482 U.S. at 89-91). Because FCCC residents are not prisoners, retribution and general deterrence, while valid governmental interests in the prison context, "are *not* a proper foundation for the restriction of civil detainees' constitutional rights." *Pesci*, 730 F.3d at 1297. So FCCC officials must justify their policies with other interests, like "order, safety, and security." *Id.* at 1298.

Defendants argue the mail policy satisfies the modified *Turner* standard. Plaintiffs, of course, disagree. Binding precedent settles part of the dispute. In *Al-Amin v. Smith*, the Eleventh Circuit held that prison officials' practice of opening an inmate's clearly marked legal mail—that is, mail from attorneys

6

representing or being asked to represent the inmate—outside the inmate's presence unlawfully and unconstitutionally infringed on his rights to free speech and access to the courts. 511 F.3d 1317, 1332 (11th Cir. 2008).

The *Al-Amin* court weighed all four *Turner* factors in the plaintiff's favor. First, it found that "[a]ssuring the inmate of the confidentiality of inmate-attorney mail by opening such mail only in the inmate's presence actually advances the state's interest in promoting institutional order and security." *Al-Amin,* 511 F.3d at 1331.  That is particularly true because attorneys are unlike to send contraband, and officials can readily check attorney mail for contraband by opening it in the inmate's presence.  *Id.*  Second, Al-Amin had "no other means of exercising his access-to-courts right where that access depends on confidentially communicating with his attorneys."  *Id.*  As to the third and fourth factors, the court found that while "opening all prison mail in an inmate's presence would pose an impermissible burden,…opening an inmate's attorney mail in his presence itself is the easy alternative; it 'fully accommodates the prisoner's rights at *de minimis* cost to calid penological interests."  *Id.* (quoting *Turner,* 482 U.S. at 91).

The Court finds the *Al-Amin* court's analysis of the *Turner* factors applicable to part of this action.  Opening a detainee's properly marked attorney mail outside his presence unlawfully violates his right to free speech and access to courts.  But that is not the end of the inquiry.  An inmate or

7

detainee alleging an access-to-the-courts claim must show actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (11th Cir. 1996). That is, the defendants' actions "must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Al-Amin*, 511 F.3d at 1332 (citation omitted). "In order to show actual injury, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Id.* (quotation marks and citation omitted).

Plaintiffs have not alleged the requisite actual injury here. Neither plaintiff claims that any particular piece of incoming privileged legal mail has been opened outside his presence. Nor do they identify any nonfrivolous legal claim impeded by the FCCC's new mail policy. Plaintiffs thus do not state an access-to-courts claim based on the allegation that attorney mail has been opened outside their presence. If a defendant or other state actor does open properly marked attorney mail outside a plaintiff's presence, that plaintiff may file a new complaint.

Plaintiffs' other access-to-courts claim also fail for lack of actual injury. Plaintiffs do not allege that any nonfrivolous claim has been impeded by a mail processing delay or the destruction of physical mail after scanning.

Unlike an access-to-courts claim, a free-speech claim does not require actual injury. The *Al-Amin* court held the plaintiff had "a First Amendment

8

free speech right to communicate with his attorneys by mail, separate and apart from his constitutional right to access to the courts." *Id.* at 1333. And a plaintiff may recover "nominal damages for violations of the fundamental constitutional right to free speech absent any actual injury." *Id.* at 1335. Al-Amin successfully pled a free-speech claim by alleging that prison officials "inhibited, chilled, and interfered with his communication with his attorney" by "repeatedly opening his attorney mail outside his presence." *Id.* at 1333.

Plaintiffs make no such allegation. The mail policy under attack here could very well violate an FCCC resident's right to free speech, but Plaintiffs do not allege any correspondence with current or prospective legal counsel. Thus, they have not stated any ripe claim that Defendants have violated their right to free speech on that basis. *See Allen v. St. John,* 827 F. App'x 1002, 1006 (11th Cir. 2020). Again, if such a claim becomes ripe for either defendant, he may assert it in a new complaint.

The Court now turns to the rest of Plaintiffs' incoming mail. Plaintiff's claims do not fair as well under *Turner* when considering non-privileged mail. When limiting the analysis to this other mail, all four *Turner* factors favor Defendants. First, preventing contraband from entering the FCCC is a strong and legitimate interest, *see Al-Amin,* 511 F.3d at 1331, and the mail policy is rationally connected to that interest. While attorneys are not likely to send their clients contraband, the Court cannot make the same assumption of

9

Plaintiffs' other unknown acquaintances. Second, the mail policy provides an alternate means for Plaintiffs to exercise their rights to communicate by mail. They are still able to send outgoing mail, and they can receive incoming mail electronically via the provided tablets. Third, as the Eleventh Circuit found in *Al-Amin*, "opening all prison mail in an inmate's presence would pose an impermissible burden." *Al-Amin*, 511 F.3d at 1331. And fourth, while there is an alternative—FCCC staff could search each piece of Plaintiffs' mail before delivering it to them—it does not fully address legitimate governmental interest. Opening and searching the mail onsite could expose FCCC staff to dangerous items and substances, and contraband could still slip through. Thus, the mail policy as applied to mail not from legal counsel is lawful.

Plaintiffs' other claims stemming directly from the mail policy are not supported by factual allegations. Plaintiffs claim the policy could prevent them from receiving religious books and materials, but they do not allege any such materials have been withheld. Nor do they allege that their ability to exercise their religious beliefs have been hindered in any way. Plaintiffs also claim the policy could prevent them from taking college courses remotely. But again, it is a purely hypothetical claim. Plaintiffs do not allege they attempted to take college courses but were blocked by the mail policy.

2. <u>The shared tablets</u>

Plaintiffs complain that requiring residents to access their mail via tablets shared with other FCCC residents could spread diseases. The Court construes this claim as a challenge to the constitutionality of the conditions of Plaintiffs' confinement. Plaintiffs do not claim Smart Communications has any control over their conditions of confinement, so the Court considers this claim against Carner only.

Because Plaintiffs are civil detainees, their claim arises under the Fourteenth Amendment rather than the Eighth Amendment. But "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments, and it makes no difference whether [the plaintiff] was a…detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving…detainees." *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (cleaned up).

Courts apply a two-part analysis to challenges to conditions of confinement. A plaintiff must establish an objective component and a subjective component. "Under the objective component, the detainee must prove that the conditions are sufficiently serious to violate the Eighth Amendment: that is, he must show that 'extreme' conditions created an unreasonable risk—one that society chooses not to tolerate—of serious

11

damages to the detainee's future health or safety." *Ellis v. Pierce Cty., Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) (cleaned up). Under the subjective component, the detainee must show deliberate indifference, which has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotations and citation omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Saunders v. Sheriff of Brevard Cty.*, 735 F. App'x 559, 564 (11th Cir. 2018) (internal quotation and citation omitted).

Plaintiffs' allegations do not satisfy the objective or subjective components. According to their Second Amended Complaint, Plaintiffs live in the FCCC's Sea Dorm with about 68 other residents. Living in close quarters with so many other people inevitably creates a risk of the spread of communicable disease. Indeed, both Plaintiffs were diagnosed with COVID-19 in 2020 or 2021, before Carner implemented the new mail policy. Plaintiffs do not plausibly allege that sharing tablets with other FCCC residents meaningfully increases the risk of exposure to disease. What is more, requiring FCCC residents to use shared tablets to access their mail is not a risk that society does not tolerate. Touching an item that someone else has touched—and maybe even sneezed on—is a normal part of living in society. Plaintiffs'

12

allegations about the shared tablets do not amount to an unreasonable risk of harm serious enough to satisfy the objective component. *See Truss v. Warden, 684 F. App'x 794, 797-98 (11th Cir. 2017)* (allegation that the use of unsanitary hair clippers could lead to infection or disease did not establish an unreasonable threat of serious harm).

Nor do Plaintiffs plausibly allege that Carner had subjective knowledge that shared tablets create an unreasonable risk. Hall complained about the health risk of sharing tablets in a resident communication form, and Carner responded, "Do you not use the phones (for the same reasons)?" (Doc. 16-1 at 1). Carner's response shows he does not draw an inference that the tablets create a significant risk separate from the necessarily shared living conditions of the FCCC. The Court finds that belief reasonable.

## Conclusion

In sum, Plaintiffs do not state any plausible cause of action in their Second Amended Complaint. They do not allege facts showing the mail policy has meaningfully hindered their access to courts. Nor do they allege the mail policy has chilled any constitutionally protected privileged communication with legal counsel. And the policy holds up to the *Turner* test when applied to non-privileged mail. Finally, the provision of shared tablets does not create an unreasonable risk of serious harm, and the factual allegations do not plausibly show that Carner is deliberately indifferent to any such risk.

13

That said, the mail policy could theoretically lead to a constitutional rights violation. If a state actor opens a plaintiff's clearly marked attorney mail outside the presence of that plaintiff, he might have a case. But that has not happened here. The Court will thus dismiss the Second Amended Complaint without prejudice. Any amendment that could save this action would have to be specific to the effected plaintiff, so it makes no sense to let Plaintiffs jointly file a third amended complaint. If either plaintiff can plausibly allege the mail policy chilled his constitutionally protected speech with legal counsel, he may file a new action.

Accordingly, it is now **ORDERED:**

Defendant Jon Carner's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 27) and Defendant Smart Communications Holdings, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 39) are **GRANTED**. Plaintiffs' Second Amended Complaint is **DISMISSED without prejudice**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 6, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record